IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NORTHEAST TEXAS ELECTRIC COOPERATIVE, INC., | § § § § § § § § § § § § § | |
| *Plaintiff,* | | |
| v. | | Case No. 2:22-cv-00497-RWS-RSP |
| SOUTHWESTERN ELECTRIC POWER COMPANY, | | |
| *Defendant.* | | |

**REPORT AND RECOMMENDATION**

Before the Court is the Emergency Motion for Preliminary and Permanent Injunction filed by Plaintiff Northeast Texas Electric Cooperative, Inc. ("NTEC"). **Dkt. No. 13**. For the following reasons, the motion should be **DENIED**.

## I.     Background

The pleadings and evidence show that NTEC is a not-for-profit electric generation and transmission cooperative that provides wholesale electricity to distribution cooperatives, which provide retail electric service to 24 Texas counties and two Louisiana parishes. NTEC serves its cooperative members by a combination of self-owned projects and wholesale power purchases. NTEC's second largest wholesale supplier of electricity is Defendant Southwestern Electric Power Company ("SWEPCO"). SWEPCO is a vertically-integrated electric utility that serves customers in three states and is subject to regulation by the Federal Energy Regulatory Commission and utility commissions in all three states—one of which is the Public Utility Commission of Texas ("PUCT").

NTEC purchases power from SWEPCO pursuant to a Power Supply Agreement. Relevant to the dispute before the Court is Section 6.02 of the Power Supply Agreement ("PSA"), which provides:

**6.02 *Purchase of Additional Generating Capacity.***

SWEPCO will advise NTEC of its plan to purchase additional capacity in order to meet SWEPCO's requirements power sales commitments including retail load that SWEPCO is obligated to serve under governing state law and wholesale load that SWEPCO is contractually obligated to serve at cost of service rates. NTEC shall have the option to participate in any such purchase on a load ratio share basis. For purposes of this Section 6.02, NTEC's load ratio share shall be determined by dividing NTEC's load served with power supplied by SWEPCO by the sum of the total load (including the loads of wholesale requirements customers) for which SWEPCO provides power supply in the SWEPCO Load Control Area using the most recent annual data available. Any such purchase by NTEC will reduce the Minimum Purchase Obligation by the amount of the purchase.

Dkt. No. 13-4 at 26. On May 27, 2022, SWEPCO filed an application with the PUCT requesting approval to acquire two wind facilities and one solar facility ("Renewable Facilities") totaling 999 MW of generation capacity to offset SWEPCO's early retirement of three lignite generating plants, including: Pirkey, Welsh 1, and Welsh 3. NTEC asserts that SWEPCO breached Section 6.02 of the PSA by failing to provide NTEC with adequate advance notice and sufficient information to analyze the acquisition. Dkt. No. 13-2 at 8. SWEPCO disagrees. Dkt. No. 26 at 3.

On January 14, 2023, NTEC filed this motion to enjoin SWEPCO from (1) "engaging in any action relating to the purchase of generation resources where SWEPCO has not first complied with Section 6.02 of the Power Supply Agreement" and (2) "directly or indirectly communicating with the PUCT and any other state regulatory authority as it relates to all pending and future regulatory approvals to purchase certain generation resources that are subject to Section 6.02 of the Power Supply Agreement without first complying with Section 6.02." Dkt. No. 13-10 at 2. At the hearing on January 30, 2023, NTEC clarified that it was seeking a three to six month "pause"

of the current proceedings before the PUCT and any other regulatory body concerning this acquisition.

Thus, the issue before the Court is whether NTEC is entitled to a preliminary injunction instituting a three to six-month pause of all proceedings related to SWEPCO's acquisition of the Renewable Facilities. The purpose of the pause would be to give NTEC time to review information and make an informed decision on whether to exercise its option under Section 6.02 to participate in the acquisition.

## II. Law

A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) that plaintiff is likely to suffer irreparable harm absent an injunction, (3) an injunction will burden the defendant less than denying an injunction would burden the plaintiff, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The Fifth Circuit has consistently held that because a preliminary injunction is an extraordinary remedy, it should only be granted if the party seeking it has clearly carried the burden of persuasion on all four requirements. *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

## III. Analysis

It should be noted that SWEPCO denies that NTEC is even entitled to exercise an option under Section 6.02 of the PSA because of the terms of a second, related contract between the parties, Rate Schedule 119 ("RS 119"). Dkt. No. 26 at 3 *et seq*. The Court finds that there is not sufficient evidence in the record to allow resolution of the interplay of the two contracts, but SWEPCO raises a substantial question as to the current availability of the option to participate under Section 6.02. However, it is not necessary for the Court to resolve that issue at this time.

Section 6.02 simply requires SWEPCO to "advise" NTEC of a plan to purchase additional capacity. It is undisputed that SWEPCO did advise NTEC, and the world at large, when it filed its application for PUCT approval to purchase the additional resources on May 27, 2022. It is also undisputed that any purchase of the resources cannot be consummated until after the regulatory approval is obtained. However, NTEC argues that the PSA must be interpreted to require that NTEC be advised before the application for regulatory approval is filed, and far enough before to allow NTEC to "meaningfully" evaluate the purchase and decide whether to participate. It also contends that the notice must be accompanied by access to the records that SWEPCO considered in making its own decision to seek approval. On the face of the contract, there is simply insufficient basis to read these obligations into Section 6.02.

NTEC argues that the history of dealings between the parties provides the basis to support its expanded view of "advise." As demonstrated at the hearing, however, there is not currently in the record anything approaching the kind of history it would take to support NTEC's position. In 2001, long before even the earlier version of the PSA was in effect, SWEPCO allowed NTEC 11 days' notice to consider whether to participate. Even if NTEC had been given several months' notice before the PUCT application was filed, NTEC has failed to show that it would have done anything different regarding the option to participate. It has now been more than 8 months since the PUCT application was filed and NTEC is continuing to seek 3 to 6 additional months to consider exercising the option. NTEC advised at the hearing that it has now received, by way of discovery in this lawsuit, the information it needs to evaluate the option and still needs 3 to 6 months. The Court simply sees no likelihood that NTEC will prevail on its theory that Section 6.02 required all of that before the PUCT application could be filed.

4

Also very concerning is the issue of the balance of hardships. NTEC contends that the irreparable injury to it will be that if it exercises its option to participate in the purchase (assuming for now that it currently has such an option) it would need to seek PUCT approval that might or might not be granted. If NTEC had been able to exercise its option before the application was filed, it could be pending approval by the PUCT in the same proceeding as SWEPCO's application. Whether this is an injury that is irreparable is debatable. However, SWEPCO has also shown that if its PUCT proceeding is "paused," approval might not be obtained in time to consummate its purchase contract with the contractors engaged to build the Renewable Facilities. If SWEPCO does not get regulatory approval, those contractors can withdraw for their contracts, various favorable tax breaks could be lost, and SWEPCO would be exposed to significantly higher labor costs in any renegotiated contracts. There is also the potential loss of the $5 million SWEPCO has invested in its current project, as well as millions of dollars in possible fines for failure to maintain adequate resources to meet the public demand. Dkt. No. 26 at 14-15. NTEC asks the Court to find that the $50,000 bond required by the state court for the TRO in December 2022 would be adequate. The Court finds that the relief sought by NTEC would require a bond in the tens of millions, which the hearing indicated would not be possible.

SWEPCO had argued in its briefs that the relief sought in the motion was overly vague, a point that the Court finds was cured by the clarification of the requested relief at the hearing. However, the Court finds that even as to that narrower relief, the record does not support the issuance of a preliminary injunction.

### IV. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that NTEC's Emergency Motion for Preliminary and Permanent Injunction (Dkt. No. 13) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 8th day of February, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE